# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————
                                    )
JASON D. IVARONE,                   )
4950 Brenman Park Drive, #302       )
Alexandria, Virginia  22304         )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        Case No.: 1:05CV02322 (JR)
                                    )
                                    )
JOSEPH FRIEND,                      )
7732 Goodfellow Way                 )
Derwood, Maryland  20855            )
                                    )
            Defendant.              )
———————————————————)

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## AND COMPEL ARBITRATION

Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, Defendant Joseph Friend moves this Court for an Order dismissing Plaintiff Jason Ivarone's Complaint, with prejudice, and compelling him to arbitrate his claims pursuant to the mandatory arbitration provisions of Plaintiff's Employee Agreement with his former employer, CACI, INC. – COMMERCIAL ("CACI").

The grounds supporting this motion are set forth in detail in Defendant's Statement of Points and Authorities, submitted herewith, and the Declarations of Patrick G. Stefl and Henry A. Platt, Esquire, in Support of Defendant's Motion to Dismiss and Compel Arbitration, submitted herewith.

Dated: January 27, 2006


        /s/ Henry A. Platt
Henry A. Platt, D.C. Bar No. 425994
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Ave., N.W., Suite 1000
Washington, D.C.  20037-1905
(202) 333-8800

Attorneys for Defendant
Joseph Friend

BP3083.DOC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JASON D. IVARONE,                       )
4950 Brenman Park Drive, #302           )
Alexandria, Virginia  22304             )
                                        )
            Plaintiff,                   )
                                        )
      v.                                 )        Case No.: 1:05CV02322 (JR)
                                        )
                                        )
JOSEPH FRIEND,                          )
7732 Goodfellow Way                     )
Derwood, Maryland  20855                )
                                        )
            Defendant.                   )
_____)

## STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## AND COMPEL ARBITRATION

Defendant Joseph Friend has moved for an order dismissing this action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and compelling arbitration pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 ("FAA").  Defendant submits this statement of points and authorities in support of that motion.

Plaintiff, a former employee of CACI, INC. – COMMERCIAL ("CACI"), has brought this action for defamation against his former CACI supervisor, Joseph Friend.  Pursuant to the mandatory arbitration provision in Plaintiff's Employee Agreement with CACI, Plaintiff was required to mediate, and then arbitrate, his claims of defamation against Defendant, instead of filing a court action.  As Plaintiff has failed to arbitrate his claims, the Court should dismiss Plaintiff's Complaint and compel arbitration in accordance with the Employee Agreement.

## STATEMENT OF FACTS

On November 29, 2001, the Plaintiff signed an Employee Agreement with his (and

Defendant's) employer, CACI, INC. – COMMERCIAL ("CACI").  Plaintiff's Employee

Agreement is attached as Exhibit A to the Declaration of Patrick G. Stefl in Support of

Defendant's Motion to Dismiss Complaint and to Compel Arbitration ("Stefl Decl."), submitted

herewith.  Paragraph 13 of the Agreement requires the Plaintiff to first mediate and then, if

necessary, arbitrate any claims relating to his employment instead of resorting to court action.

*Id.* at ¶ 13.  The relevant section of the Agreement states:

> ***Any controversy or claim arising out of, or relating to this Agreement, or its
> breach, or otherwise arising out of or relating to my recruitment by,
> employment with, or the termination of employment with, CACI*** (including,
> without limitation, to any claim of discrimination whether based on race, color,
> religion, national origin, gender, age, sexual preference, disability, status as a
> disabled or Vietnam-era veteran, or any other legally protected status, and
> whether based on federal or State law, or otherwise) ***will be settled first by resort
> to mediation by CACI's Ombudsman and then, if mediation fails to resolve the
> matter, by arbitration.***  This arbitration will be held in Arlington, Virginia in
> accordance with American Arbitration Association's Rules for the Resolution of
> Employment Disputes. ***The arbitrator, and only the arbitrator, will decide any
> and all disputes regarding whether a claim is arbitrable.***  Judgment upon award
> rendered by the arbitrator will be binding upon both parties and may be entered
> and enforced in any court of competent jurisdiction.

*Id*. (emphasis added).

The language of this arbitration agreement is almost precisely the same as the language of

the arbitration agreements enforced by this Court in *Hughes v. CACI, Inc. – Commercial*, 384 F.

Supp. 2d 89 (D.D.C. 2005), and in *Emeronye v. CACI Int'l*, 141 F. Supp. 2d 82 (D.D.C. 2001).[1]

---

[1]    With regard to scope, the only difference between the arbitration clause in Plaintiff's
Employee Agreement and in the agreements in *Hughes* and *Emeronye*, is in that the older
agreements use the phrase "…arising out of or relating to my CACI employment…" instead of
"…arising out of or relating to my recruitment by, employment with, or the termination of
employment with, CACI…."  *Hughes*, 384 F. Supp. 2d at 94-95; *Emeronye*, 141 F. Supp. 2d at
84.  This change in language does not reduce the scope of the agreement to arbitrate.

This Court found in both cases that the employee agreement covered the parties' disputes (one of which included a defamation claim against individual, non-signatory defendants)[2] and that the arbitration provision was enforceable. Accordingly, the Court granted defendants' motions to dismiss and compel arbitration. *Hughes*, 384 F. Supp. 2d at 100; *Emeronye*, 141 F. Supp. 2d at 84.

Non-binding mediation by CACI's Ombudsman is the first formal step of CACI's alternative dispute resolution process ("ADR"), as referenced in Plaintiff's Agreement. Employee Agreement ¶ 13 (Stefl Decl. Exh. A). If mediation fails, the Employee Agreement requires the parties to resolve the dispute by arbitration in accordance with the rules of the American Arbitration Association, as opposed to resorting to litigation in court. *Id.*

Plaintiff has instituted arbitration proceedings against his former employer, CACI,[3] but he has failed to invoke the contractually mandated alternate dispute resolution provisions of his Employee Agreement with respect to Defendant Joseph Friend, his former supervisor at CACI. Stefl Decl. ¶ 5-6, 8. Instead of mediating or arbitrating his claims against Defendant, Plaintiff filed a complaint with this Court on December 2, 2005, alleging defamation *per se*. Compl. ¶¶ 1, 90-101. The Complaint alleges that Defendant, a "managerial employee of CACI," Compl. ¶ 3, stated to employees of CACI and CACI's client (the DOJ) that Plaintiff was leaving CACI to

---

The other differences between the agreements do not relate to the scope of the arbitration clause. For example, in Plaintiff's Employee Agreement, "the American Arbitration Association's Rules for the Resolution of Employment Disputes" replaced "the model employment arbitration procedures of the American Arbitration Association." The sentence in Plaintiff's arbitration clause that states, "The arbitrator, and only the arbitrator, will decide any and all disputes regarding whether a claim is arbitrable" was not part of the *Hughes* and *Emeronye* agreements. *Hughes*, 384 F. Supp. 2d at 94-95; *Emeronye*, 141 F. Supp. 2d at 84.

[2]    *See* discussion of *Hughes* in Argument II, *infra*.

[3]    Technically, Plaintiff has sought arbitration against CACI International Inc, the ultimate parent company of CACI, INC. – COMMERCIAL. Stefl Decl. ¶ 6.

join a CACI competitor, Compl. ¶¶ 43-48; that Defendant stated to Plaintiff that Plaintiff was ineligible for rehire at CACI, Compl. ¶¶ 59-64; that Defendant stated or implied in an e-mail to CACI and DOJ employees that Plaintiff was a "security threat" to others in the building and to the computer network, Compl. ¶¶ 66-76; and that, after Plaintiff left CACI's employment, Defendant "warned" fellow CACI employees who were working with Plaintiff after Plaintiff resigned that Plaintiff was a threat to CACI security, that Plaintiff had had several complaints against him at CACI made by DOJ employees, and that Plaintiff had been escorted from the CACI building, Compl. ¶¶ 83-89.

CACI, upon learning of these claims against Defendant, informed Plaintiff, through counsel, of its belief that the dispute was covered by the Employee Agreement, and expressed its willingness to consolidate Plaintiff's claims against Mr. Friend in the pending arbitration proceeding before the American Arbitration Association ("AAA"), *Ivarone v. CACI International Inc*, AAA No. 16 160 00761 05. Declaration of Henry A. Platt, Esq. ("Platt Decl.") ¶ 2; Stefl Decl. ¶ 8. Plaintiff, through counsel, rejected CACI's proposal. Platt Decl. ¶ 2; Stefl Decl. ¶ 8.

Defendant was served with the summons and Complaint on January 8, 2006. Platt Decl. ¶ 3. On January 18, 2006, Defendant, through counsel, formally requested that Plaintiff voluntarily dismiss this action and submit to the contractual alternative dispute resolution procedures. Platt Decl. ¶ 4 & Exh. A. On January 23, 2006, plaintiff, through counsel, refused the request. *Id*.

## ARGUMENT

I. **PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO UTILIZE THE MANDATORY ARBITRATION PROCEDURES PRESCRIBED BY HIS VALID AND ENFORCEABLE ARBITRATION AGREEMENT.**

The FAA provides for "stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc*., 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3 and 4). Under Plaintiff's Employee Agreement with CACI, he was contractually required to utilize the mediation and arbitration procedures instead of pursuing litigation of his employment-related defamation claims in this or any other court.[4]

The Employee Agreement specifies that all claims "relating to" or "arising out of" Plaintiff's employment with CACI must be settled in accordance with CACI's mediation and arbitration procedures. Employee Agreement ¶ 13 (Stefl Decl. Exh. A). The language of the Employee Agreement does not specifically mention defamation claims. However, the United States Supreme Court has read the FAA to "manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). *See also Waffle House,* 534 U.S. at 289. Indeed, this Court has spoken firmly on the matter, holding that "[t]he FAA creates a strong presumption favoring the enforcement of arbitration agreements, and doubts regarding the scope of an arbitration agreement ***must*** be resolved in favor of arbitration." *Booker v. Robert Half Int'l Inc*., 315 F. Supp. 2d 94, 97 (D.D.C. 2004) (emphasis added), *aff'd*, 413 F.3d 77 (D.C. Cir. 2005); *Hughes v. CACI, Inc. – Commercial*, 384 F. Supp. 2d 89, 95 (D.D.C. 2005).

---

[4]    For a discussion of why Plaintiff's Employee Agreement with CACI extends to claims against Defendant, a non-signatory to the Employee Agreement, *see* Argument II, *infra*.

Section 3 of the FAA requires this Court to either stay or dismiss this action and compel arbitration of all claims alleged in the Complaint, in accordance with the parties' arbitration agreement.  9 U.S.C. § 3; Employee Agreement ¶ 13 (Stefl Decl. Exh. A).  The FAA, states, in relevant part:

### § 3.  Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Section 3 of the FAA is mandatory, as it states that a district court "shall" stay the trial of the action if the parties had a written agreement to arbitrate the dispute.  *Id.*

Notwithstanding the language of Section 3 of the FAA referring to "stays" of proceedings, it is well settled that dismissal of the action is appropriate where all claims in an action are subject to arbitration.  *Emeronye v. CACI Int'l, Inc.,* 141 F. Supp. 2d 82, 88 (D.D.C. 2001) (holding that a court may dismiss a claim after compelling arbitration when all issues raised in the complaint must be submitted to arbitration).  *See also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3 [of the FAA], however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

The question of arbitrability is normally an issue for the Court to decide.  However, in this case it is a question to be determined by the arbitrator.  Courts may find that the parties

agreed to leave the determination of arbitrability to the arbitrator when "there is 'clear and unmistakable' evidence that they did so." *First Options v. Kaplan*, 514 U.S. 938, 944 (U.S. 1995) (quoting *AT&T Technologies, Inc.* v. *Communications Workers*, 475 U.S. 643, 649 (1986)). In the present case, the Employee Agreement expressly states that "[t]he arbitrator, and only the arbitrator, will decide any and all disputes regarding whether a claim is arbitrable." Employee Agreement ¶ 13 (Stefl. Decl. Exh. A). There can be no more "clear and unmistakable evidence" that the parties intended to submit questions of arbitrability to an arbitrator, and not the Court. Thus, the question of whether plaintiff's claims against Defendant are subject to arbitration is a question to be determined by the arbitrator in the first instance, and not this Court. Accordingly, Plaintiff's Complaint *must* be dismissed in favor of arbitration. However, assuming, *arguendo*, that this Court should determine the arbitrability of Plaintiff's claims, the analysis is as follows.

It is well settled in this District that the Court determines the enforceability of the arbitration agreement by engaging in a two-part inquiry. *Hughes*, 384 F. Supp. 2d at 95 (citing *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 149-50 (D.D.C. 2002)). First, the Court must decide whether the parties entered into a valid and enforceable arbitration agreement. *Id*. Second, the Court must determine whether the agreement encompasses the claims raised in the complaint. *Id*.

Plaintiff entered into and signed an Employee Agreement with CACI that included a requirement that any controversy or claim "arising out of, or relating to this Agreement, or its breach, *or otherwise arising out of or relating to my* recruitment by, *employment with, or the termination of employment with,* CACI … will be settled first by resort to mediation by CACI's Ombudsman and then, if mediation fails to resolve the matter, by arbitration." Employee

Agreement (Stefl Decl. Exh. A) (emphasis added). "[A] signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." *Hughes*, 384 F. Supp. 2d 89, 96 (citing *Emeronye v. CACI Int'l*, 141 F. Supp. 2d 82, 86 (D.D.C. 2001); *Nelson*, 215 F. Supp. 2d at 152 (plaintiff's signature indicates mutual assent unless duress is proven); *Ayers v. Mosby*, 504 S.E.2d 845, 848 (Va. 1998) (signature is binding on a person with the capacity to understand an agreement in the absence of fraud, duress, or mutual mistake)).[5] As noted above, in *Hughes* and in *Emeronye* this Court dismissed complaints and compelled arbitration under almost exactly the same arbitration agreement. *Hughes*, 384 F. Supp. at 100; *Emeronye*, 141 F. Supp. 2d at 84. No special or distinguishing circumstances, such as duress, fraud, or mutual mistake, exist here, and therefore the arbitration agreement is valid and binding on Plaintiff and should be enforced in accordance with this Court's previous decisions.

The second step of the Court's inquiry is to determine whether the agreement encompasses the claims raised in the complaint. The Supreme Court has held that the language 'arising out of or relating to' the underlying contract or agreement should be interpreted broadly. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985); *see also Thian Lok Tio v. Wash. Hosp. Ctr.*, 2004 U.S. Dist. LEXIS 23503 (D.D.C. 2004) (copy attached).

Plaintiff's defamation claims focus on four events, *see* Compl. ¶ 91, three of which occurred during Plaintiff's employment with CACI. Plaintiff's first claim is that Defendant

---

[5]    The Employee Agreement expressly states that it "will be governed by the laws of the Commonwealth of Virginia without regard to conflict of laws provisions." Employee Agreement ¶ 21 (Stefl Decl. Exh. A). This Court has held that the specific arbitration clause at issue is enforceable under both District of Columbia and Virginia law. *Hughes*, 384 F. Supp. 2d at 96; *Emeronye*, 141 F. Supp. 2d at 86.

allegedly stated to employees of CACI and CACI's client (the DOJ), that Plaintiff was leaving CACI to join a CACI competitor.  Compl. ¶¶ 43-48.  Second, Plaintiff alleges that Defendant stated to Plaintiff that Plaintiff was ineligible for rehire at CACI.  Compl. ¶¶ 59-64.  Plaintiff's third claim is that Defendant allegedly stated or implied in an e-mail to CACI and DOJ employees that Plaintiff was a "security threat" to others in the building and to the computer network.  Compl. ¶¶ 66-76.  All three of these events, as alleged, occurred during the workday, when Plaintiff and Defendant were on CACI premises.  There is no question that, by its terms, the arbitration provision of Plaintiff's Employee Agreement, which includes the broadly-interpreted language quoted in the paragraph above, encompasses these defamation claims before this Court, as they undoubtedly "relate to" Plaintiff's employment with CACI.  *See* Employee Agreement (Stefl Decl. Exh. A).

The only alleged defamatory event that occurred after Plaintiff had resigned from CACI[6] involved Defendant contacting *another CACI employee* who did contract work at Plaintiff's new place of employment to allegedly "warn" the employee that Plaintiff was a threat to CACI security, that Plaintiff had had several complaints against him at CACI made by DOJ employees, and that Plaintiff had been escorted from the CACI building.  Compl. ¶¶ 83-89.  These alleged "warnings" involved issues that had arisen with Plaintiff *while he had been a CACI employee*.  This defamation claim, too, is plainly "related to" Plaintiff's "employment with," as well as his "termination of employment with," CACI, *see* Employee Agreement ¶ 13 (Stefl. Decl. Exh. A), even though it allegedly occurred after Plaintiff ceased being a CACI employee.

Like Plaintiff in this case, the plaintiff in *Thian Lok Tio* alleged defamation.  2004 U.S. Dist. LEXIS 23503.  The Court found that the arbitration provision contained in the employment

---

[6]    Plaintiff's last day of employment with CACI was on Friday, December 10, 2004.  Stefl Decl. ¶ 3; Compl. ¶ 36.

contract ("any controversy, dispute or disagreement arising out of or relating to this Agreement, or breach thereof, shall be settled by binding arbitration") was broad enough to encompass each claim in the plaintiff's complaint, even the defamation claims that allegedly occurred *after* the plaintiff's employment had been terminated.  *Id*. at *17-18.

Plaintiff himself has acknowledged that his defamation claims are within the scope of the agreement to arbitrate.  Instead of pursuing *these same claims* (including the claim that allegedly occurred after Plaintiff's CACI employment had ended) in this Court as against his employer, CACI, Plaintiff filed a Demand for Arbitration with the American Arbitration Association ("AAA") on December 2, 2005, the same day that he filed his Complaint against Defendant Friend.  Stefl Decl. ¶ 6.  In the Demand for Arbitration against CACI, Mr. Ivarone described the "nature of the dispute" as follows:

> Defamation per se, arising out of statements made by Joseph Friend while a management employee of CACI to multiple persons in Dec. '04 & Jan. '05 suggesting Mr. Ivarone was a security threat, was incompetent and dishonest in the performance of his duties, and was violating the law, and Negligent Retention by CACI of Joseph Friend.

Demand for Arbitration (Stefl Decl. Exh. B).  Having submitted these same claims against CACI in arbitration under a theory of *respondeat superior*, Plaintiff should now be estopped from arguing that the defamation claims are beyond the scope of the Employee Agreement.

Accordingly, the claims raised in Plaintiff's Complaint are encompassed by the valid and enforceable arbitration agreement, and must be submitted to arbitration.

II.    **PLAINTIFF'S CLAIMS AGAINST DEFENDANT MUST BE DISMISSED AND DEFERRED TO ARBITRATION AS THE ALLEGATIONS INVOLVE CONDUCT WITHIN THE SCOPE OF DEFENDANT'S CACI EMPLOYMENT, AND THEREFORE ARE COVERED UNDER THE TERMS OF CACI'S ARBITRATION AGREEMENT WITH PLAINTIFF.**

Defendant Friend was a managerial employee at CACI at all times relevant to Plaintiff's Complaint.  S*ee* Stefl Decl. ¶ 5; Compl. ¶ 3.  As Defendant's alleged conduct was at all times within the scope of his employment at CACI, the claims against Defendant are encompassed by the broad arbitration agreement that Plaintiff had with CACI, as discussed below.

Plaintiff's Employee Agreement provides that it is to be governed by the laws of the Commonwealth of Virginia.  Employee Agreement ¶ 21 (Stefl Decl. Exh. A).  An act is within the scope of employment under Virginia law if:

> (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business….

*Gina Chin & Assocs. v. First Union Bank*, 260 Va. 533, 541 (Va. 2000) (quoting *Kensington Associates v. West*, 234 Va. 430, 432 (1987)).  The court in *Gina Chin* clarified that the motive of the employee is not determinative, "[r]ather, the issue is 'whether the service itself, in which the tortious act was done, was within the ordinary course of such business.'"  *Id*. at 543 (quoting *Davis v. Merrill*, 133 Va. 69, 78 (1922)).  Even when an employee's motive is to advance his own self-interest, rather than the interest of his employer, his conduct is within the scope of employment if he is "nonetheless 'performing his duties . . . in the execution of the services for which he was employed.'"  *Id*. at 543 (quoting *Commercial Business Systems, Inc. v. Bell South Services, Inc*., 249 Va. 39, 46 (1995)).

As described in Argument I, *supra*, Plaintiff's Complaint largely describes alleged defamatory events that occurred when Plaintiff and Defendant were on CACI premises during

the workday, and the statements allegedly made by Defendant (whether true or false) were to CACI employees and CACI clients about work-related issues, such as business competitors, resignation and rehire, and CACI security. Compl. ¶¶ 26-80. The only other alleged defamatory event involved a "warning" to another CACI employee about these same work-related issues. Compl. ¶¶ 83-89. These allegations, on their face, describe conduct that falls within the duties and services of a "managerial employee of CACI." Compl. ¶ 3. Accordingly, Defendant's conduct, as alleged by Plaintiff, is within the scope of Defendant's CACI employment. There is no allegation whatsoever that Defendant was acting *ultra vires*.[7]

Most courts have found that claims against non-signatory employee agents are subject to a valid arbitration clause between the plaintiff and the employer where the employee agents' actions were within the scope of their employment. *See, e.g*., *International Paper Co. v. Schwabedissen, Maschinen & Anlagen GMBH,* 206 F.3d 411, 416-17 (4th Cir. 2000) (noting that common law agency principles provide a basis for binding non-signatories to arbitration agreements) (citing *Thomson-CSF, S.A. v. American Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *Arnold v. Arnold Corp*., 920 F.2d 1269, 1281-82 (6th Cir. 1990) (following "the well-settled principle affording agents the benefits of arbitration agreements made by their principal") (citing cases from the Second, Third, Seventh, and Ninth Circuits).

---

[7]     In fact, Plaintiff specifically alleges in his Complaint that for at least one of the defamatory communications, "Mr. Friend was acting as an employee of CACI at the time of the defamatory communication, and held himself out to the DOJ officials and the CACI employees as someone who possessed the authority to make such a determination on behalf of CACI." Compl. ¶ 76.

This Court has also found that deferral to arbitration agreements should be extended to non-signatory employee agents.   The plaintiff in *Hughes* brought claims against his employer, CACI, and two of his supervisors individually, alleging race discrimination, defamation, intentional infliction of emotional distress, and breach of the "obligation to deal with the Plaintiff in good faith."  Complaint and Jury Demand at 2, *Hughes v. CACI, Inc. – Commercial*, 384 F. Supp. 2d 89 (D.D.C. 2005) (No. 1:04-cv-01246-RBW).  The Court dismissed the plaintiff's Title VII claims against the non-signatory individual defendants, and, based on almost the exact same arbitration agreement involved in the instant case, held that "any *additional* claims the plaintiff may wish to file against the CACI employees are encompassed by the broad arbitration agreement which this Court holds to be valid and binding."  *Hughes*, 384 F. Supp. 2d at 92 n.2 (emphasis added) (citing *Brick v. J.C. Bradford & Co*., 677 F. Supp. 1251, 1257 (D.D.C. 1987)).

In *Brick*, this Court ruled that even though an employer company did not expressly indicate to a customer that it intended to extend to its employees any rights or privileges under their agreement, the plaintiff customer clearly understood when he was dealing with the individual defendants that they were representatives and employees of the company.  *Brick*, 677 F. Supp. at 1257.  Accordingly, the Court declared that the employees were third-party beneficiaries of the arbitration agreement, and that plaintiff's common law claims against them were within the scope of the arbitration agreement.  *Id*.

Like the plaintiffs in *Hughes* and *Brick*, Plaintiff in this case knew when he was dealing with Defendant that Defendant was a representative and employee of CACI.  Plaintiff states in his Complaint that the Defendant was "at all times materially hereto a managerial employee of CACI International, Inc."  Compl. ¶ 3.  Furthermore, Plaintiff seems to recognize that Defendant's actions may very well be within the scope of Defendant's CACI employment, as he

has adopted a *respondeat superior* theory of liability in order to bring claims against CACI for the actions of its employee, Mr. Friend, in the arbitration proceedings pending before the AAA. Demand for Arbitration (Stefl Decl. Exh. B).

Under Plaintiff's Employee Agreement, "Any controversy or claim arising out of, or relating to … [his] employment with… CACI" was required to be settled by mediation and arbitration. Employee Agreement ¶ 13 (Stefl Decl. Exh. A). If Plaintiff is allowed to avoid arbitration of his employment-related claims against Defendant simply because Defendant is a non-signatory, it would nullify the federal rule mandating enforcement of valid arbitration agreements. Defendant stands willing to arbitrate the claims against him. *See* Platt Decl. ¶ 4. Courts should not deny requests to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).

Plaintiff's claims, as stated above, are within the scope of an enforceable agreement to arbitrate. Where, as here, all the claims presented in the lawsuit are arbitrable, dismissal with prejudice is the appropriate remedy. *See Emeronye v. CACI*, 141 F. Supp. 2d 82 (D.D.C. 2001).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration should be granted and the Complaint should be dismissed with prejudice.

Dated:  January 27, 2006

<div style="margin-left:40%">

___/s/ Henry A. Platt_____

Henry A. Platt, D.C. Bar No. 425994
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Ave., N.W., Suite 1000
Washington, D.C.  20037-1905
(202) 333-8800

Attorneys for Defendant Joseph Friend

</div>

bp2865

LEXSEE 2004 U.S. DIST. LEXIS 23503

**THIAN LOK TIO, M.D. et al., Plaintiffs, v. WASHINGTON HOSPITAL CENTER et al., Defendants.**

**Civil Action No. 04–0701 (RMU)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2004 U.S. Dist. LEXIS 23503*

**November 5, 2004, Decided**

**DISPOSITION:** Defendant's Motion to Dismiss granted.

**COUNSEL:** [*1] For Plaintiffs THIAN LOK TIO, M.D. and TING SOAN S. TIO: Anthony M. Rachal, III, Washington, DC.

For Defendants WASHINGTON HOSPITAL CENTER CORPORATION, MEDSTAR HEALTH, INC., JAMES CALDAS, EUGENE WOOD, WM. JAMES HOWARD, M.D., SUSAN HART, MICHAEL R. BOIVIN, SR., LEONARD WARTOFSKY, M.D., NOEL SIMPSON, and LINDA JACKSON: Keith J. Harrison, King, Pagano & Harrison, Washington, DC.

**JUDGES:** RICARDO M. URBINA, United States District Judge.

**OPINIONBY:** RICARDO M. URBINA

**OPINION:**

**MEMORANDUM OPINION**

**GRANTING THE DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

This matter comes before the court on the defendants' motion to dismiss and compel arbitration. The defendants argue that the plaintiffs must submit their claims to binding arbitration pursuant to the terms of the employment agreement the plaintiff signed with defendants. Because the parties entered into a valid and enforceable arbitration agreement that encompasses the claims brought in the plaintiffs' complaint, the court grants the defendants' motion to dismiss.

**II. BACKGROUND**

**A. Factual History**

Plaintiff Thian Lok Tio, M.D. ("Dr. Tio") is a former employee of Washington Hospital Center, *et al.* (collectively, "the Hospital") [*2] who once held the position of Director of Endoscopy in the Section of Gastroenterology. Compl. P 3. The employment relationship commenced on November 30, 2000, when Dr. Tio executed a written employment contract ("Agreement") Compl. Ex. 1. This Agreement set forth the terms and renewal of Dr. Tio's annual employment. Compl. P 16. Paragraph 5 of the Agreement, titled "Term and Termination," indicated that the contract was renewable from year to year and stated that "either party shall have the right at any time to terminate this Agreement without cause by providing at least ninety (90) days prior written notice to the other party of intention to terminate." Compl. Ex. 1, P 5. Paragraph 12 of the Agreement, titled "Dispute Resolution," stated that "any controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration." Compl. Ex. 1, P 12. On April 18, 2003, the Hospital terminated Dr. Tio with cause, effective immediately, by way of a "Notice of Termination with Cause" letter. Compl. Ex. 3.

**B. Procedural History**

On March 17, 2004, Dr. Tio and his wife, Ting Soan Tio ("Mrs. Tio"), filed suit against [*3] the Hospital in D.C. Superior Court, alleging: (1) tortious breach of contract; (2) tortious interference with contract of employment; (3) denial of common–law good faith and fair dealing; (4) tortious interference with third–party physician–patient contracts; (5) defamation/slander; (6) intentional infliction of emotional distress; (7) fraud/misrepresentation; (8) antitrust violations; (9) wrongful discrimination under state and federal law; and (10) loss of consortium. Compl. PP 16–106.

On April 28, 2004, the Hospital removed the action to this court on the grounds that the complaint included a claim for relief under the Federal Civil Rights Act of 1866, *42 U.S.C. § 1981*, a federal statute arising under the laws of the United States. Def.'s Mot. for Removal, PP 3–4 (citing *28 U.S.C. § 1441*).

Finally, on May 5, 2004, the defendants moved to dismiss the complaint and compel the plaintiffs to pursue arbitration in accordance with the terms of Dr. Tio's Employment Agreement and the *Federal Arbitration Act*. The court now turns to that motion.

### III. ANALYSIS

#### A. Legal Standard for Motion to Dismiss and Compel Arbitration

The *Federal* [*4] *Arbitration Act* ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. § 2*. The FAA creates a strong presumption in favor of enforcing arbitration agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27, 96 L. Ed. 2d 185, 107 S. Ct. 2332 (1987)* (stating that arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)* (noting that federal policy favors arbitration). Nevertheless, parties cannot be forced into arbitration unless they have agreed to do so. *AT&T Techs. Inc. v. Communications Workers, 475 U.S. 643, 648-49, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)*. Moreover, the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration. *Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 294, 151 L. Ed. 2d 755, 122 S. Ct. 754 (2002)*. [*5] Because arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause. *Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 154 L. Ed. 2d 491, 123 S. Ct. 588 (2002)* (holding that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted).

Such questions of arbitrability are typically brought before the court pursuant to *section 4 of the FAA*, which permits a party to petition any United States district court which would otherwise have subject matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." *9 U.S.C. § 4*. When presented with a motion to compel arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." *Nelson v. Insignia/ESG, Inc., 215 F. Supp. 2d 143, 146 (D.D.C. 2002)*. It is well-settled law that to make such a determination, courts must en-

gage in a two-part inquiry. [*6] *Id. at 149-50*. First, the court must decide whether the parties entered into a valid and enforceable arbitration agreement. *Nur v. K.F.C. USA, Inc., 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001)*. If the court finds that the parties did enter a valid arbitration agreement, the second step is to determine whether the arbitration agreement encompasses the claims raised in the complaint. *Id.*

If the party opposing arbitration contends that no agreement to arbitrate was entered, this effectively raises the issue of whether there was a meeting of the minds on the agreement to arbitrate, and the standards for resolving a summary judgment motion pursuant to *Federal Rule of Civil Procedure 56* should be applied. *Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94, 99 (D.D.C. 2004)*. Hence, "the proper approach to employ in reviewing the defendant's motion to dismiss and compel arbitration is to apply the same standard of review that governs *Rule 56* motions." *Brown v. Dorsey & Whitney, LLP, 267 F. Supp. 2d 61, 67 (D.D.C. 2003)*.

#### B. Legal Standard for Motion for Summary Judgment

Summary [*7] judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Diamond v. Atwood, 310 U.S. App. D.C. 113, 43 F.3d 1538, 1540 (D.C. Cir. 1995)*. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 248*.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson, 477 U.S. at 255*. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" [*8] in support of its position. *Id. at 252*. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, 477 U.S. at 322*. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

Case 1:05-cv-02322-JR     Document 3     Filed 01/27/2006     Page 20 of 22

Page 3
2004 U.S. Dist. LEXIS 23503, *8

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton, 334 U.S. App. D.C. 92, 164 F.3d 671, 675 (D.C. Cir. 1999)*; *Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993)*. Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene, 164 F.3d at 675*. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson, 477 U.S. at 249–50* (internal citations omitted).

## C. Agreement to Arbitrate is Valid and Should Be Enforced

The court concludes that Dr. Tio entered [*9] into a valid and enforceable agreement with the Hospital. The Supreme Court has held that the coverage of the FAA extends to employment contracts. *Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 149 L. Ed. 2d 234, 121 S. Ct. 1302 (2001)*. The evidence shows that the plaintiff entered into and signed an Employment Agreement with the Hospital that included a requirement that all disputes arising out of or relating to the Agreement be arbitrated. Compl. Ex. 1, P 12. Furthermore, it is basic law that "one who signs a contract which he had an opportunity to read and understand is bound by its provisions." *Patterson v. Reeves, 113 U.S. App. D.C. 74, 304 F.2d 950, 951 (D.C. Cir. 1962)*.

Nevertheless, the plaintiff challenges the enforceability of the Agreement on the grounds that (1) there was no mutuality or meeting of the minds, (2) the agreement is an unconscionable contract of adhesion, (3) there was no consideration, and (4) there was fraud in the inducement of the agreement. Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"). The court determines each of these arguments to be equally unavailing.

First, it is clear that "a signature on a contract indicates 'mutuality [*10] of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." *Emeronye v. CACI Int'l, Inc., 141 F. Supp. 2d 82, 86 (D.D.C. 2001)*; *Davis v. Winfield, 664 A.2d 836, 838 (D.C. 1995)* (stating that "mutual assent to a contract, often referred to as a 'meeting of the minds,' is most clearly evidenced by the terms of a signed written agreement"). No such special circumstances are evidenced or adduced by the plaintiffs in this action. All of Dr. Tio's arguments regarding his perceived lack of mutual assent relate to his *subsequent* dissatisfaction with the Hospital's apparent failure to honor "future revenue participation in all his professional and client referred income." Pl.'s Opp'n at 10. But it is basic contract law that in giving effect to the mutual intent of the parties, a court is to assume that the language of a contract reflects the intentions of the parties. *NRM Corp.*

*v. Hercules, Inc., 244 U.S. App. D.C. 356, 758 F.2d 676, 681–82 (D.C. Cir. 1985)*. As for the parties' meeting of the minds at the time the contract was made, the plaintiff simply relies [*11] on his own bare assertion that there was no meeting of the minds. Pl.'s Opp'n at 9. However, a plaintiff cannot solely rely on this conclusory statement to defeat the defendant's argument. *Greene, 164 F.3d at 675*. Thus, the court concludes that the plaintiff's signature on the contract indicates mutuality of assent.

The court is not persuaded by Dr. Tio's alternative claim that the arbitration clause is unenforceable as a provision of an unconscionable contract of adhesion imposed on one party by the other. Pl.'s Opp'n at p.11. To establish unconscionability, the plaintiff must prove both that he lacked a meaningful choice and that the terms of the contract were unreasonably favorable to the other party. *Smith, Bucklin & Assocs., Inc. v. Sonntag, 317 U.S. App. D.C. 364, 83 F.3d 476, 480 (D.C. Cir. 1996)*. Dr. Tio has proven neither in this case.

Courts refuse to hold that a plaintiff has been deprived of a meaningful choice where the plaintiff had a fair opportunity to understand the terms of his Employment Agreement and was not compelled to sign the agreement out of fear of unemployment. *Booker, 315 F. Supp. 2d at 102*; *Nur, 142 F. Supp. 2d at 51*. [*12] Here, it is manifest that Dr. Tio had ample opportunity to go over the terms of the Agreement. Not only did Dr. Tio read and understand the terms, he even negotiated for additional and/or different terms himself. Pl.'s Opp'n Ex. 10. As demonstrated in a letter from the Hospital to Dr. Tio, the Hospital responded to Dr. Tio's concerns by sending him a "revised agreement." Pl.'s Opp'n Ex. 11. The fact that the plaintiff actually negotiated terms himself, and had the Hospital modify terms, shows that the plaintiff had a fair opportunity to understand the terms of his Employment Agreement.

Moreover, the fact that the plaintiff is a well-educated professional with an international reputation in the specialized field of gastroenterological medicine further supports the conclusion that he should be bound by the terms of the Agreement. "Courts have often taken the education and background of the employee into account in determining whether the employee should be bound by an arbitration agreement." *Brown, 267 F. Supp. 2d at 82–83*; *see, e.g., Emeronye, 141 F. Supp. 2d at 86 n.5* (stating that "the fact that the plaintiff had a legal education and two law degrees [*13] supports that the plaintiff should be bound by the terms of the contract she signed"); *Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991)* (noting there was "no indication in this case . . . that Gilmer, an experienced businessman, was coerced or defrauded into

agreeing to the arbitration clause in his registration application"). Similarly, Dr. Tio's education and experience demonstrate that he was fully aware of the implications of signing the Agreement with the Hospital. The fact that Dr. Tio was able to negotiate for a revised agreement is further proof of his competence. Pl.'s Opp'n, Ex. 11.

Given that the plaintiff here had a fair opportunity to understand the terms of the agreement, including the arbitration clause, the Court concludes that he had a meaningful choice when he decided to sign the agreement. Moreover, the court notes that this is not a case where the plaintiff was compelled to sign the agreement out of a fear of being unemployed if he failed to do so. *Brown, 267 F. Supp. 2d at 74*. It is clear from the plaintiff's own allegations that had he not signed the Agreement with the Hospital, Dr. Tio could [*14] have remained at Georgetown University Medical Center. Compl. P 83.

Dr. Tio has adduced no evidence whatsoever that the terms of the agreement "are so unreasonably favorable to the defendant that the Court must find the Employment Agreement as a whole unconscionable." *Brown, 267 F. Supp. 2d at 75*. Dr. Tio was to be compensated at an annual salary of $225,000.00, plus fringe benefits, in exchange for his professional services. Compl. Ex. 1 at 2. Nothing in the Agreement indicates anything other than reasonable and fair contract of employment between Dr. Tio and the Hospital.

As stated above, Dr. Tio was compensated at an annual rate of $225,000.00 for his services. *Id*. Despite Dr. Tio's apparent dissatisfaction with the Hospital's alleged failure to compensate him for patient referrals, Pl.'s Opp'n at 12, the court does not consider any such allegations as sufficient to render the contract unconscionable. The seminal line of cases regarding unconscionable contract claims, starting with *Williams v. Walker-Thomas Furniture Co., 121 U.S. App. D.C. 315, 350 F.2d 445 (D.C. Cir. 1965)*, demonstrate that courts are only willing to find price-value as [*15] an unreasonable contract term where the pricing is so gross, excessive or exploitative as to render the contract terms unconscionable and the contracts unenforceable. *See, e.g., Patterson v. Walker-Thomas Furniture Co., 277 A.2d 111, 114 (D.C. 1971)* (concluding that in a proper case gross overpricing may be raised in defense as an element of unconscionability). However, the facts of the instant case hardly rise to level of exploitative, as evidenced by the fact that the plaintiff has not even attempted to provide evidence that an annual salary of $225,000.00 is akin to gross under-pricing of his services.

Finally, the plaintiff's assertion that he was fraudulently induced into entering the entire Agreement carries no weight. Only if the plaintiff were alleging fraudulent

inducement of the specific arbitration clause would this have any bearing on the court's power to hear this dispute. It is well established that "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967)*. [*16] However, when a party raises fraud in the inducement of the contract generally, this is a matter for arbitration. *Id*.

Here, the plaintiff alleges that he was "fraudulently induce [sic] to leave the employment of Georgetown University Medical Center" and "to refer his patients to Defendant WHC based upon false promises, statements and misrepresentations by Defendants on behalf of the WHC upon which the plaintiff relied to his detriment." Compl. PP 83–84. Dr. Tio also argues that "the fraudulent promise of future revenue participation in all his professional and client referred income generated for the hospital was never honored and the allegation of similar treatment of all physicians were misrepresentations upon which plaintiff was induced to rely to sign the contract and to accept the arbitration clause to his detriment [sic]." Pl.'s Opp'n at 10. Both of these arguments suggest that Dr. Tio was fraudulently induced to enter into the entire Agreement. Significantly, nowhere in his Complaint does Dr. Tio argue that he was fraudulently induced to specifically enter into the arbitration clause. Def.'s Reply at 9–10. Thus, his argument regarding fraudulent inducement is ultimately [*17] without merit. In sum, the court concludes that the Employment Agreement entered into by the parties is valid and should be enforced.

### D. The Arbitration Agreement Encompasses the Claims in the Complaint

Next, the court must determine whether the Agreement to Arbitrate encompasses the claims Dr. Tio raises in his Complaint. *AT&T Techs., 475 U.S. at 648–49*. Here, the Agreement requires that "any controversy, dispute or disagreement arising out of or relating to this Agreement, or breach thereof, shall be settled by binding arbitration." Compl. *Ex. 1 P. 12*. The Supreme Court has held that the "language 'arising out of or relating to' the underlying contract or agreement" should be interpreted broadly. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.13, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)*; *Prima Paint, 388 U.S. at 406*. The Court concludes that the arbitration provision contained in the Agreement between Dr. Tio and the Hospital is broad enough to encompass each claim in the plaintiffs' complaint, including those brought by Dr. Tio for defamation and slander.

Dr. Tio argues that the defamation and [*18] slander

was "committed after the contract was terminated" and thus is not arbitrable because "the contract and the provision for arbitration was never intended to cover actions after the contract is revoked or breached by either party." Pl.'s Opp'n at p. 8. However, Dr. Tio's defamation claim is based on his allegation that the Hospital "falsely and maliciously composed and published in a conspicuous place . . . its letter of termination." Compl. at P 63. Since the alleged defamation is based entirely on Dr. Tio's termination letter, the court concludes that Dr. Tio's defamation claim falls within the scope of the arbitration clause of the employment contract. *Pearce v. E.F. Hutton Group, Inc., 264 U.S. App. D.C. 246, 828 F.2d 826, 832–33 (D.C. Cir. 1987)* (enforcing an arbitration agreement over claims of defamation).

Dr. Tio nonetheless submits that he is exempt from the provisions of the FAA under *section 1 of the Act* because he is within the "class of workers engaged in foreign or interstate commerce." Pl.'s Opp'n at 15–17. However, this argument has been squarely rejected by the Supreme Court, which held in *Circuit City* that the exemption only applies to "transportation [*19] workers." *Circuit City, 532 U.S. at 109*. Numerous other courts have also examined the exemption in question, and all have found that *section 1 of the FAA* "exempts only the employment contracts of workers actually engaged in the movement of goods in interstate commerce." *Cole v. Burns Int'l Sec. Servs., 323 U.S. App. D.C. 133, 105 F.3d 1465, 1471 (D.C. Cir. 1997)* (citing cases from the First, Second, Third, Fifth, Sixth and Seventh Circuits).

The court also determines that Mrs. Tio's claims are entirely derivative of and dependent on Dr. Tio's claims, and should accordingly be arbitrated along with Dr. Tio's claims. Mrs. Tio is seeking damages "as a direct and proximate result of her husband's intentional and wrongful termination by Defendants." Compl. P 9. All of Mrs. Tio's claims are derivative of her husband's action for wrongful termination, as each is entirely dependent on and cannot survive without a finding that Dr. Tio's termination was wrongful. *Smith v. Brown & Williamson Tobacco Corp., 3 F. Supp. 2d 1473, 1477 n.5 (D.D.C. 1998)*; *Meek v. Shepard, 484 A.2d 579, 582 n.6 (D.C. 1984)* (dismissing spouse's claim [*20] along with the plaintiff's claim because spouse's claim for damages was wholly derivative and dependent on the plaintiff's claim). Thus, the court dismisses Mrs. Tio's claims along with her husband's and compels them to arbitrate the claims together.

Finally the Court finds equally meritless the plaintiff's assertion that the Hospital has somehow waived its arbitration rights because it did not seek arbitration before it terminated Dr. Tio. Pl.'s Opp'n at 19. Nowhere in the Agreement does it say that the Hospital must seek arbitration before it may exercise its right to terminate the Dr. Tio. In fact, the Agreement itself gives both parties the right "to terminate the Agreement" without cause. Compl. Ex. 1, P 5. Since the Hospital has acted consistently within its arbitration right, the court finds that the Hospital has not waived any right to compel arbitration.

### IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of November, 2004.

RICARDO M. URBINA

United States District Judge