IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON D. IVARONE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOSEPH FRIEND, )<br>)<br>Defendant. )<br>) | Case No. 05ca02322<br>Hon. James Robertson |

**PLAINTIFF'S MOTION FOR RECONSIDERATION
OF FEBRUARY 10, 2006 ORDER PURSUANT TO RULE 59(e)**

The Plaintiff, Jason Ivarone ("Mr. Ivarone"), by counsel, hereby moves this Court, pursuant to Federal Rules of Civil Procedure 59(e), for reconsideration of its February 10, 2006 Order dismissing Mr. Ivarone's complaint against Defendant, Joseph Friend ("Mr. Friend"). The grounds for this Motion are set forth in the attached Memorandum.

February 27, 2006

Jason D. Ivarone,
By Counsel

*/s/ Elaine Charlson Bredehoft*

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON D. IVARONE,  )  <br> ) <br> Plaintiff,  ) <br> ) <br> v.  ) <br> ) <br> JOSEPH FRIEND,  ) <br> ) <br> Defendant.  ) <br> ) | Case No. 05ca02322 <br> Hon. James Robertson |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR RECONSIDERATION OF FEBRUARY 10, 2006
## ORDER PURSUANT TO RULE 59(e)

The Plaintiff, Jason Ivarone ("Mr. Ivarone"), by counsel, hereby moves this Court, pursuant to Federal Rules of Civil Procedure 59(e), for reconsideration of its February 10, 2006 Order dismissing Mr. Ivarone's complaint against Defendant, Joseph Friend ("Mr. Friend")

### PROCEDURAL BACKGROUND

This is an action at law arising out of defamation *per se* of Plaintiff by Mr. Friend. Mr. Ivarone filed his Complaint on December 27, 2005. On January 18, 2006, Mr. Friend sent Plaintiff a letter requesting that Plaintiff dismiss this Complaint and voluntarily submit the claims against him to arbitration. In a letter dated January 23, 2006, Plaintiff declined to agree, and explained his legal basis for declining that request. Mr. Friend filed a Motion to Dismiss Plaintiff's Complaint and Compel Arbitration ("Motion to Compel") on January 27, 2006. Mr. Ivarone filed his memorandum and points of authority opposing Mr. Friend's Motion to Compel on February 10, 2006. That same day, this Court issued its Order dismissing Mr. Ivarone's complaint but declining to compel arbitration.

## **SUMMARY OF ARGUMENT**

In its one and half page memorandum, this Court found that Mr. Ivarone agreed to arbitrate the dispute at issue with his "former employer" and accordingly dismissed the complaint against Mr. Friend. February 10, 2006 Order ("Order") at 1-2. This Court, however, declined to compel arbitration, stating "whether he chooses to proceed further with them [his claims in arbitration] is up to him." *Id.* at 2. This Court further characterized Plaintiff's response as "that he is no longer bound by the employment agreement and that in any case the defamation of which he complains occurred after his discharge." *Id.* at 1.

Mr. Ivarone respectfully disagrees with this Court's characterization of his response and details his response below. *See* Sections II – V, *infra* and Plaintiff's Memorandum and Points of Authority in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint and Compel Arbitration. Mr. Ivarone has never claimed that he is no longer bound by his employment agreement. *See* Order at 1. In fact, Mr. Ivarone submitted his dispute with his employer, CACI, to arbitration, simultaneously with filing this action against Mr. Friend in federal court.[1] However, Mr. Friend is NOT and WAS NOT Mr. Ivarone's employer. Mr. Friend was NOT a signatory to the employment agreement, which contained the arbitration clause at issue. Accordingly, in order for Mr. Friend to be subject to the arbitration clause, this Court would have to apply equitable legal principles finding that, even though he is not a party to the arbitration clause, and even though he is also not currently employed by CACI, he can claim the protection under CACI's contract for equitable reasons. *See* Sections III-V, *infra*. Without such a finding by this Court, Mr. Ivarone is left in a position where he cannot bring the action in federal court,

---

[1] Even so, Mr. Ivarone believes his allegations against CACI do not fall within the subject matter of the arbitration clause, but that issue and the scope of the arbitration clause is to be decided by the arbitrator pursuant to the terms of the employment agreement. *See* ¶ 13 of Employment Agreement.

2

but also has no ability to enforce any arbitral award against Mr. Friend if Mr. Friend should dispute the arbitrator's power over him. In the end, this Court's ruling potentially makes Mr. Friend judgment proof.

Furthermore, assuming this Court did apply equitable principles to find that Mr. Friend, even though a non-signatory to the arbitration agreement, can force Mr. Ivarone to bring his allegations against him in arbitration, the proper remedy for this Court to apply is to grant Mr. Friend's motion and compel arbitration. Contrary to Mr. Friend's request and the law, this Court merely dismissed the action without citing the rule or legal principle under which such dismissal was granted. Accordingly, even if Mr. Ivarone would want to proceed further against Mr. Friend in arbitration, assuming that Mr. Friend could be held to any award issued by the arbitrator, Mr. Ivarone may not be able to amend his AAA complaint to add Mr. Friend because claims of defamation are subject to a one year statute of limitations period. Again, this leaves Mr. Ivarone without a remedy against Mr. Friend.

Mr. Ivarone therefore requests that this Court reconsider its February 10, 2006 Order and deny Mr. Friend's motion to dismiss and compel arbitration. Alternatively, if this Court finds that Mr. Friend may in fact invoke the arbitration clause contained in the employment agreement between CACI and Mr. Ivarone, then this Court should grant the motion to compel, and compel arbitration of Mr. Ivarone's claims against Mr. Friend, as requested by Mr. Friend.

## ARGUMENT

### I. Mr. Ivarone's Complaint Should Not Be Dismissed Without an Order Compelling that the Claims Be Arbitrated

As quoted above, this Court declined to compel arbitration stating that "whether [Mr. Ivarone] chooses to proceed further with [his claims against Mr. Friend in arbitration] is up to him." Order at 2. However, as the matter currently stands, contrary to this Court's stated

3

intention, Mr. Ivarone may not have the choice to proceed further with his claims against Mr. Friend in arbitration. Although he properly made his claim in this Court against Mr. Friend within the one-year statute of limitations applicable to claims of defamation, Mr. Ivarone would be outside the statute of limitations in any new filing with the American Arbitration Association made in response to this Court's Order, because this Court dismissed Mr. Ivarone's defamation claim against Mr. Friend without compelling arbitration. Under this Court's February 10, 2006 Order, Mr. Friend has neither a claim in Court, nor a claim in arbitration and the statue of limitations for his claim has run. While Mr. Ivarone may move to amend his AAA complaint to add Mr. Friend as a party (and has filed such a request in response to this Court's Order), if the arbitrator determines that such an amendment would not relate back to the original filing date of the AAA complaint, Mr. Ivarone is again left without a remedy against Mr. Friend.

Moreover, Mr. Friend never moved to dismiss the complaint without compelling arbitration. In fact, there is no support for dismissing the complaint without compelling arbitration. Mr. Friend brought his motion under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure and Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 ("FAA"). However, Mr. Friend never argues for dismissal based upon any alleged failure to state a claim (Rule 12(b)(6)) or lack of subject matter jurisdiction (Rule 12(b)(1)) and neither rule is applicable to the facts of this case. Furthermore, while Title 9 U.S.C. § 3 provides for a mandatory stay (not dismissal) when issues are "referable to arbitration under an agreement," the DC Circuit has clearly stated that Title 9 U.S.C. § 3 does not apply to cases in which the issues "referable to arbitration" are between a signatory of the arbitration agreement and a non-signatory, like Mr. Friend. *See DSMC Inc. v. Convera Corp.*, 349 F.3d 679 (D.C. Cir. 2003) and Section IV, *infra*.

The appropriate standard of review for a motion to compel arbitration, no matter how it is titled, is the same standard as is applied to Rule 56 motions for summary judgment. *Booker v. Robert Half International, Inc.*, 315 f Supp.2d 94, 99 (D.D.C. 2004) ("How the parties style the motion is not determinative. Rather, if the party opposing arbitration contends that no agreement to arbitrate was entered, … the standards for resolving a summary judgment motion pursuant to Fed.R.Civ.P. 56 should be applied."); *Brown v. Dorsey & Whitney*, LLP, 267 F.Supp. 2d 61, 67 (D.D.C. 2003) ("the proper approach to employ in reviewing the defendant's motion to dismiss and compel arbitration is to apply the same standard of review that governs rule 56 motions.") Applying these standards, if a court finds that an arbitration agreement is valid and enforceable, it "'shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Booker*, 315 F Supp at 99 (*quoting* 9 U.S.C. § 4). Accordingly, assuming *arguendo* that this Court had a proper basis for finding the arbitration agreement applicable to Mr. Friend, the only recourse is to compel arbitration, not dismiss the case outright.

**II.     Mr. Friend, a Former Employee of CACI, is NOT a Party to the Agreement and there is No Evidence the Parties Intended that Mr. Friend Benefit from the Contractual Terms between CACI and Mr. Ivarone**

"The Supreme Court and [the DC] Circuit have repeatedly held that a party can not be compelled to arbitrate a dispute that it has not contractually agreed to arbitrate." *DSMC, Inc v. Convera Corp*, 273 F. Supp. 2d 14, 28 (D.D.C. 2002); *see also EEOC v. Waffle House, Inc*, 122 S. Ct. 754, 764 (U.S. 2002) ("It goes without saying that a contract cannot bind a nonparty."). While there exists a liberal federal policy favoring arbitration, ultimately, an agreement to arbitrate is a contract that must be enforced according to its terms and as to the parties of that contract. Accordingly, courts "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *Id.* at 764 ("we do not

5

override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated"); *see also Prima Paint Corp. v Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (U.S. 1967) ("As the 'saving clause' in § 2 indicates, the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so.") Further, nothing in the Federal Arbitration Act ("FAA") authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement. *Id.* at 762. Mr. Friend, who is no longer employed by CACI, is not a party to the agreement to arbitrate, has no privity of contract, and has provided no basis or authority to suggest that he would be subject to the jurisdiction of arbitration proceedings. Moreover, Mr. Ivarone did not agree that he would arbitrate any claims against Mr Friend and did not contemplate such a consequence in executing the Employment Agreement with CACI

The deprivation of the Constitutional right to a jury trial cannot be compromised where there is no clear intent to waive such a right. There is no evidence that Mr Ivarone intended to waive his right to pursue tort claims against a former employee for actions taken after Mr. Ivarone's resignation from CACI, which included actions long after Mr Ivarone had ceased any relationship with CACI. By the same token, there is not a shred of evidence that Mr. Friend intended to be bound by the Employment Agreement between Mr Ivarone and CACI. If one reversed this example – if Mr. Friend had desired to sue Mr. Ivarone because of some tort Mr Ivarone committed against Mr. Friend – there is nothing in the Ivarone/CACI Agreement that suggests Mr Friend would have to bring his action in arbitration and nothing that suggests arbitration would be binding. Where there is no authority to bind Mr. Friend, as is evident here, Mr. Ivarone would potentially be left with no legal remedy against Mr. Friend if this Court

6

dismisses this action and compels arbitration. This is also not the intended result of CACI or Mr. Ivarone in executing the agreement to arbitrate their disputes.

Mr. Friend is not a party, the agreement does not apply on its face, there is no jurisdiction by AAA over Mr. Friend, Mr. Friend has not demonstrated any compelling reason to depart from the United States Constitution and the Seventh Amendment in this action, and there is no evidence Mr. Friend and Mr. Ivarone intended to be bound by arbitration.

### III. Section 4 of the FAA is Not a Valid Basis for Compelling Arbitration

In favor of its argument to compel arbitration, Mr. Friend cites to Sections 3 and 4 of the FAA. However, in *DSMC Inc. v. Convera Corp.*, 349 F.3d 679 (D.C. Cir. 2003), the DC Circuit has strongly suggested that a non-signatory to an arbitration agreement cannot compel a signatory to arbitrate its claims against the non-signatory. Specifically, the DC Circuit found that any motion to compel arbitration was not one appropriately made under Title 9 U.S.C. § 4 because there was no written agreement to arbitrate between the plaintiff and the non-signatory as required by the Section 4 of the FAA. *Id* at 683-84 ("There is no issue referable to arbitration under an agreement in writing between Convera and DSMC because there is no arbitration agreement between those two parties."); *see also* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a <u>written agreement</u> for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28...") (emphasis added). "Section 4 does not merely require that there be a written agreement somewhere in the picture." *Id.* at 683. It requires that the person seeking to compel arbitration be a party to that written agreement. *Id* ("'The statute has no application to 'issues' in cases between different parties.'") (quoting *IDS Life Ins. Co. v SunAmerica, Inc*, 103 F.3d 524, 529 (7th Cir. 1996)). Section 4 of the FAA does not apply when the motion is based upon a

non-signatory's "effort to expand [a signatory's] obligation *beyond* the terms of that written agreement." *See id.* (finding that when a party tries to expand a signatory's obligation based upon equitable estoppel principles, such motion does not fall within Section 4 of the FAA).[2]

Therefore, since there is no written agreement between Mr. Ivarone and Mr. Friend, Section 4 does not permit or require arbitration, as it addresses only written agreements between parties.

### IV. Section 3 of the FAA is Not a Valid Basis for Staying or Dismissing this Case

Mr. Friend moves for a stay of this case, and further dismissal of this case, based upon Section 3 of the FAA. However, the DC Circuit in DSMC further found that even if arbitration could be compelled between a non-signatory and a signatory under the theory put forth in that case, "the litigation may not be stayed under *Section 3* because the issues in the litigation are not 'referable to arbitration under an agreement.'" *Id.* at 684 (*quoting* 9 U.S.C. § 3); *see also Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) ("The denial of the benefit of the mandatory stay provision to non-signatories has been grounded in the recognition that non-signatory's litigation with an arbitrating party cannot be referred to arbitration.") Because there was no arbitration agreement between the non-signatory defendant and the signatory plaintiff, the DSMC Court concluded "that the mandatory stay provision of Section 3 does not apply to litigation involving parties not subject to a written arbitration agreement..." *Id.* Similarly, Mr. Friend cannot invoke the mandatory stay provision of Section 3 in favor of his motion to stay or his motion to dismiss based upon an arbitration agreement to which he is not a party.

---

[2] The DC Circuit, therefore, found that it did not have jurisdiction to review the lower court's decision not to compel arbitration under Section 16 of the FAA. *Id.*

8

### V.       Mr. Friend Cites No Support for Compelling Arbitration in this Case

Mr. Friend has neither contractual support, nor statutory support, for his assertion that the claims against him must be submitted to arbitration. As stated above, he is not a party to the contract he cites requiring arbitration and neither Section 3 nor Section 4 of the FAA are applicable. Furthermore, Mr. Friend is unable to cite any binding or persuasive cases supporting his motion to compel arbitration with Mr. Ivarone.

#### A       Courts in the DC Circuit have not Previously Compelled Arbitration of Disputes Between a Non-Signatory Employee and a Signatory Employee

"While it is clear that a non-signatory can not be compelled to arbitrate a claim, neither the Supreme Court nor [the DC] Circuit have directly addressed the issue of whether a willing non-signatory to an arbitration agreement can compel a signatory to arbitrate its claims against the non-signatory." *DSMC*, 273 F. Supp. 2d at 28. However, the DSMC Court interpreted "dicta in the Supreme Court's decision in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), [to] support[] the holding that such arbitration can not be compelled." *Id.* Mr. Friend fails to cite even one case in which a court compelled a plaintiff-employee to arbitrate his claims against another employee based upon an arbitration provision contained in a contract between that plaintiff-employee and his employer, let alone any binding DC Circuit cases. Rather, Mr. Friend cites cases which are not controlling authority and which involve facts and circumstances not apposite to this case. *See* Motion to Dismiss and Compel Arbitration at 12, *citing International Paper Co. v. Schwabedissen, Maschinen & Anlagen* GMBH, 206 F. 3d 411 (4th Cir. 2000) (holding plaintiff purchaser compelled to arbitrate against manufacturer based upon contract between manufacturer and distributor on which the plaintiff's rights hinged); *Thomson-CSF, S.A. v. American Arb. Ass'n*, 64 F. 3d 773 (2d Cir. 1995) (reversing lower court's decision to compel non-signatory to

9

arbitrate, involving all corporate parties); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3d Cir. 1993) (compelling arbitration in stockholder-broker relationship); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990) (same).[3]

B.  *Hughes* is not Binding or Persuasive

The only other support Mr. Friend offers for his position is vague *dicta* in *Hughes v. CACI, Inc.*, 384 F.Supp.2d 89 (D.D.C. 2005), which states in a footnote that a claim against the individual defendants in that case could not be maintained because "Title VII applies to employers only." *Hughes*, 384 F.Supp.2d at 92 n.2. The *Hughes* Court goes on to hypothesize that "any additional claims the plaintiff may wish to file against the CACI employees are encompassed by the broad arbitration agreement..." *Id.* This statement, upon which Mr. Friend is evidently attempting to rely, is *dicta* relating to the specific claims in that instance, which are not the same claims as alleged against Mr. Friend by Mr. Ivarone. In fact, no discrimination-related claims are alleged at all, only one count of common law defamation. That *dicta* is not binding on this Court. Further, it is not even clear that this issue was briefed or before the *Hughes* Court. Mr. Friend cites no other case that even suggests that federal courts in the DC Circuit would hold an employee bound by an arbitration clause that he did not sign.

The *Hughes* Court cites *Brick v. J.C. Bradford & Co.*, 677 F.Supp. 1251 (D.D.C. 1987) in support of its statement in *dicta*. However, *Brick* involves a very different relationship than that of the employment relationship. *Brick* involves the relationship between a customer and a brokerage firm and that brokerage firm's employees. Although the *Brick* Court ultimately finds

---

[3] Furthermore, there is no indication that courts in the DC circuit would be persuaded by cases outside this district. *See DSMC*, 273 F.Supp.2d at 29-30 (recognizing that, although DC Circuit had never addressed whether a court can compel a party to an arbitration agreement to arbitrate with a non-signatory on the basis of equitable estoppel, other circuits have so recognized, but denying the non-signatory's motion to compel nevertheless)

10

that, on the facts of that case, the individual defendants could invoke the arbitration clause, it recognizes a disagreement in the District of Columbia District Courts as to whether the brokerage firm's employees can invoke an arbitration clause between the brokerage firm and its customer. Brick, 677 F.Supp. at 1257. It therefore appears that even in the brokerage firm arena, the law is unsettled.

### C. Even if the Brick Reasoning Applies, Mr. Friend was not Clearly Acting within the Scope of his Employment

Even if the reasoning of Brick were applicable in this case, Mr. Friend would still not be able to invoke the arbitration clause. The Brick Court found that because the plaintiff clearly understood that the individual defendants were acting in their capacities as representatives of the brokerage firm, that the state law claims against these individual representatives were subject to the arbitration clause. Id. However, Mr. Friend's role, as described in the allegations contained in the Complaint, are not necessarily such actions as would have been in his capacity as a representative of CACI. The complaint alleges that Mr. Friend defamed Mr. Ivarone both while Mr. Ivarone was employed by CACI and after his employment with CACI. Such defamatory conduct was not necessarily done in Mr. Friend's capacity as a representative of CACI, and was not likely to have been done in that capacity after Mr. Ivarone's departure. In any event, it is not Mr. Ivarone's burden to prove whether the conduct was within or outside the scope of employment at this stage, and he is entitled to plead in the alternative, and permit the facts to be brought out in discovery as to whether this is the case.[4] This is not a situation in which a

---

[4] Mr. Friend cites *Gina Chin & Assocs v. First Union Bank*, 260 Va. 533, 541, 537 S.E.2d 573, 577 (2000) for the proposition that Virginia courts focus their inquiry as to scope of employment on "'whether the service itself, in which the tortious act was done was within the ordinary course of such business.'" Motion to Compel at 11. *Gina Chin* also states that the answer to that inquiry is a factual finding to be made by a jury and that one factor in determining the answer to this inquiry is the motivation of the employee. *Id.* at 543-544, 537 S.E.2d at 578. Accordingly, this

11

customer goes to a company for services, speaks with representatives of that company, and then sues the company and its representatives for a problem with those services. Mr. Friend personally directed defamatory comments about Mr. Ivarone to third parties, both within and outside of CACI.

Mr. Friend, a non-signatory to the arbitration agreement, therefore, has no legal basis for compelling Mr. Ivarone to arbitrate his claims against Mr. Friend.

## CONCLUSION

Mr. Friend is not a party to the CACI/Ivarone Arbitration Agreement, there is no evidence Mr. Friend or Mr. Ivarone intended to be bound to arbitration for any claims, there is no privity by Mr. Friend, and there is nothing raised by Mr. Friend that should compel this Court to deprive Mr. Ivarone of his Constitutional right to a jury trial.

The *Hughes* decision is neither binding on this Court, nor particularly persuasive to the case at hand. As Mr. Friend stated in his original motion to dismiss and compel arbitration, before this Court can compel arbitration, it "must decide whether the parties entered into a valid and enforceable arbitration agreement." Motion to Compel at 7 (*citing Hughes*, 384 F.Supp.2d at 95). In this instance, the parties, Mr. Ivarone and Mr. Friend, did NOT enter into a valid and enforceable arbitration agreement. *See DSMC*, 349 F.3d at 683-84.

For the reasons set forth above, Mr. Ivarone, therefore, requests that this Court reconsider its February 10, 2006 Order and deny Mr. Friend's Motion to Dismiss Plaintiff's Complaint and Compel Arbitration. Alternatively, if this Court finds that Mr. Friend may in fact invoke the arbitration clause contained in the employment agreement between CACI and Mr. Ivarone, then this

---

is a factual issue, which cannot be determined on a motion to dismiss (or to compel arbitration), when all factual allegations plead are taken as true. *See Holy Land Found for Relief & Dev v Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).

Court should compel arbitration of Mr. Ivarone's claims against Mr. Friend, as requested by Mr. Friend.

February 27, 2006

Jason D. Ivarone,
By Counsel

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800